UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL D. WINTON,

                Petitioner,

v.                                     CIVIL ACTION NO. 04-CV-40283-FL
                                     HONORABLE PAUL V. GADOLA

PAUL H. RENICO,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

### I.      Introduction

      Petitioner Paul D. Winton, a state prisoner currently confined at the Chippewa Correctional Facility in Kincheloe, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  At the time he instituted this action, Petitioner was confined at the St. Louis Correctional Facility in St. Louis, Michigan where Respondent Paul H. Renico is the warden.

      Petitioner was convicted of three counts of armed robbery and one count of assault with intent to rob while armed following a jury trial in the Oakland County Circuit Court and was sentenced as a fourth habitual offender to concurrent terms of 15 to 40 years imprisonment on those convictions.  In his pleadings, Petitioner challenges the sufficiency of the evidence to support his conviction and the lawfulness of his sentence.  For the reasons stated below, the petition for writ of habeas corpus is denied.

### II.      Facts and Procedural History

Petitioner's convictions arise from his armed robbery of JR's party store and its customers and an assault upon one customer on August 4, 2000 in Auburn Hills, Michigan. At trial, party store owner Janger Sesi testified that he was robbed by two light-skinned black males wearing masks at approximately 4:00 p.m. on August 4, 2000. One of the men was armed with a 9mm semi-automatic handgun. The unarmed man ordered him to put all of the money from the cash register into a paper bag. Sesi did as he was told and put approximately $1,430.00 and a recently cashed customer check into a No. 8 size paper bag. Sesi admitted that he had testified at the preliminary examination that he put the money and check into a No. 5 size bag. Sesi explained that he normally would reach for the No. 5 bag but the robbers had instructed him to keep his right hand on the counter so he reached for a No. 8 bag with his left hand. Sesi also identified proposed exhibits Nos. 1 and 3 as being similar to the masks worn by the two men during the robbery. Sesi could not identify either of the perpetrators.

Roger Dault testified that he had cashed a check at JR's party store and was in the store when it was robbed by two light-skinned black males wearing masks. He said that one of the men ordered him to get down on the floor and to give him all of his money. He gave the man about $60.00. He could only see the robber's hands, not his face, and described him as being 5' 10" or 11" tall. Dault could not identify the robbers.

Kirk Spillane testified that he was in JR's party store at the time of the robbery. One of the two men put a gun to his head, told him to lie on the ground, and demanded all of his money. Spillane gave the man $220.00. Spillane testified that the man had black hands but he could not describe the other man. He could not identify the robbers.

2

Randall Matteson testified that he was inside JR's party store when it was robbed by two men wearing masks and one of whom was armed.  The unarmed man told him to empty his pockets.  Matteson emptied his pockets, putting some coins on the counter, and stated that he had no other money.  The unarmed man's hands were black.  Matteson testified that proposed exhibits Nos. 1 and 3 were similar to the masks worn by the robbers.  He admitted that he had told investigating officers that the robbers were about 5' 8" tall, that one of the robbers weighed less than 200 pounds, and that the armed man had a medium to dark complexion.  He could not identify the robbers.

Paul Baker testified that he was stopped at a red light when he saw two men fleeing JR's party store around 4:00 p.m. on August 4, 2000.  He stated that they got into a silver, black and gray General Motors vehicle and drove away.  He called 911 and followed the car until a police car arrived to pursue it.  Baker acknowledged that he is a lawyer and that he represented Petitioner in 1995 and 1996, but stated he did not feel that he knew either man when he observed them fleeing the party store.

Auburn Hills Police Officer Arthur Fisk testified that he followed the car involved in the robbery, activated his lights, and attempted to stop the car, but the car accelerated instead of stopping.  He pursued the car to an apartment complex where the two suspects jumped out of the car and fled on foot as the car crashed into a parking lot wall.  Fisk said that both men were black males, but he could not see their faces.  Fisk remained with the car and found a brown paper bag containing money on the passenger seat.  A photograph of the car's interior depicted the paper bag, an iced tea bottle, and two black nylon mesh caps.

Auburn Hills Police Officer Gary Spann testified that he removed one head scarf from the

3

driver's seat and one head scarf from the passenger seat of the car.  He also recovered the brown paper bag containing $379.00 and a wallet with identification for Quincy N. Stewart Jr. from the car. He did not find a gun in the car, nor did he obtain any identifiable prints from the car.

Michigan State Police Lieutenant Jerald Alexander testified that he found six identifiable prints on the paper bag recovered from the car.  One of those prints matched Petitioner's left ring finger.  He also compared the recovered prints to those of Quincy Stewart and Ramon Winton, Petitioner's brother, but found no matches.  He did not process the head scarfs or currency for fingerprints.

Michigan State Police forensic scientist Melinda Jackson testified that the only hairs recovered from the head scarfs were Caucasian hairs and no African-American hairs were found. She also found saliva on one of the scarfs.

Michigan State Police forensic scientist Leslie Nixon testified that she tested the two head scarfs and compared them to a known DNA sample from Petitioner.  She stated that three or four people could have contributed to the DNA found on one head scarf and that Petitioner could not be excluded as a donor from that scarf.  She further stated that only two people could have contributed to the DNA recovered from the other head scarf and that the major DNA profile from that scarf matched Petitioner's DNA.  She said that only one person out of 480.6 billion people in the African-American population would match the DNA profile.  Nixon could not state when the saliva had been placed on the head scarf.

Joyce Dowridge Frank testified that she is Quincy Stewart's mother and that she and her son jointly owned a Pontiac Grand Am in August, 2000.  She testified that they only had one set of keys

4

for the car and that her son had a habit of leaving his keys in the car.  She stated that on August 7, 2000 her son reported that the Grand Am was stolen on August 4, 2000.  Frank acknowledged that her son is Ramon Winton's friend and that she saw Ramon Winton with her son at their home on August 4, 2000.

Petitioner's friend, Raynesha Sparks, testified that Petitioner was at her home watching her children while she was in bed nursing a back injury on August 4, 2000.  She said that Petitioner left her house for about 30 minutes to pick up some food, but she did not know if he drove her Ford Tempo or his Cadillac to do so.

Defense counsel moved for a directed verdict during a break in the proceedings, but the trial court denied the motion.

Petitioner then testified on his own behalf.  He stated that he was Quincy Stewart's friend and that he had given head scarfs to Stewart on several occasions.  He further stated that he gave the scarfs identified as exhibits Nos. 1 and 3 to Stewart.  Petitioner also testified that he visited with Stewart at Mark Norris' home on August 3, 2000.  Petitioner explained that he drank a bottle of iced tea from a brown paper bag as they sat in Stewart's Pontiac Grand Am.  Petitioner testified that he is six feet tall and weighs 224 pounds.  He said that his brother, Ramon Winton, is Stewart's good friend.  Petitioner described Ramon Winton as 5' 10" or 11" and 230 pounds and described Quincy Stewart as 5' 10" or 11" and 150 pounds.  Petitioner claimed that he was at Raynesha Sparks' house for the entire day on August 4, 2000 except for a short time between 7:00 p.m. and 8:00 p.m.  He denied committing the crimes.

At the close of trial, the jury found Petitioner guilty of three counts of armed robbery and one

count of assault with intent to rob while armed.  The trial court subsequently sentenced Petitioner

as a fourth habitual offender to concurrent terms of 15 to 40 years imprisonment.  In doing so, the

court scored Petitioner 25 points for offense variable 13, which concerns a continuing patter of

criminal behavior.  This changed Petitioner's minimum sentence guideline range from 126 to 420

months as scored by the probation department to 135 to 450 months.

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of

Appeals asserting that:  (1) the trial court erred in denying his motion for directed verdict, (2) the

prosecution presented insufficient evidence of his guilt, (3) his sentence was disproportionate, (4)

the sentencing guidelines were incorrectly scored, and (5) the jury based its decision upon

unreasonable inferences.  The Michigan Court of Appeals affirmed his convictions and sentence.

*People v. Winton*, No. 236850, 2003 WL 1985792 (Mich. Ct. App. Apr. 29, 2003) (unpublished).

Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was

denied.  *People v. Winton*, 469 Mich. 951, 671 N.W.2d 53 (2003).

Petitioner thereafter filed the present habeas petition asserting the following claims as

grounds for relief:

    I.      It was error for the trial court to deny his motion for directed verdict where defense counsel argued that the identity of the Petitioner as one of two men who robbed and/or assault had not been established.

    II.     Insufficient evidence was presented on the issue of identity to support the jury's verdict of guilt.

    III.    He was denied his Fourteenth Amendment rights and due process of law at sentencing when the trial court inaccurately scored 25 points under offense variable 13, which is a continuing pattern of criminal behavior.

      IV.     He was denied his Fourteenth Amendment rights to a fair trial where the verdict was based upon unreasonable inferences and evidence which was uncertain, speculative, and merely raised a conjecture or possibility.

Respondent has filed an answer to the petition asserting that it should be denied for lack merit.

## III.   <u>Standard of Review</u>

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal

habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, this Court presumes the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

IV.   **Analysis**

    A.    <u>Great Weight of the Evidence Claim</u> (Habeas Claim I)

Petitioner first asserts that he is entitled to habeas relief because the verdict was against the great weight of the evidence.  A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence.  *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985); *Cameron v. Birkett*, 348 F. Supp. 2d 825, 838 (E.D. Mich. 2004); *Cukaj v. Warren*, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002).  A claim that a verdict went against the great weight of the evidence is not of constitutional dimension for habeas corpus purposes unless the record is so devoid of evidentiary support that a due process issue is raised.  *Cukaj*, 305 F. Supp. 2d at 796; *see also Crenshaw v. Renico*, 261 F. Supp. 2d 826, 834 (E.D. Mich. 2003).  The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was sufficient evidence to support it.  *Dell*, 194 F. Supp. 2d at 648.  Where the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state law issue which is not cognizable on habeas review.  *Cameron*, 348 F. Supp. 2d at 838.  Petitioner is thus not entitled to relief on this claim.

    B.    <u>Sufficiency of the Evidence Claims</u> (Habeas Claims II and IV)

Petitioner relatedly asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence of guilt and the verdict was based upon unreasonable inferences.  Both of these claims are challenges to the sufficiency of the evidence supporting Petitioner's convictions for armed robbery and assault with intent to rob while armed.  Essentially, Petitioner

asserts that the prosecution failed to establish his identity as one of the perpetrators beyond a reasonable doubt.  Respondent contends that these claims lack merit.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319; *see also DeLisle v. Rivers*, 161 F.3d 370, 389 (6th Cir. 1998).  The Court must view this standard through the framework of 28 U.S.C. § 2254(d).  *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).  Further, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Jackson*, 443 U.S. at 324 n. 16.  "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citation omitted).

To convict a defendant of armed robbery under Michigan law, the prosecution must establish the following elements: (1) an assault, (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute.  *See* Mich. Comp. Laws § 750.529; *People v. Allen*, 201 Mich. App. 98, 100, 505 N.W.2d 869 (1993). To convict a defendant of assault with intent to rob while armed, the prosecution must establish the following elements:  (1) an assault with force and violence; (2) an intent to rob or steal; and (3) the perpetrator was armed.  *See* Mich. Comp. Laws § 750.89; *People v. Cotton*, 191 Mich. App. 377, 391, 478 N.W.2d 681 (1991).

The Michigan Court of Appeals considered these claims and concluded that the trial court

10

did not err in denying the directed verdict motion and that there was sufficient evidence for a rational trier of fact to conclude that Petitioner was guilty of three counts of armed robbery and one count of assault with intent to rob while armed. *See Winton*, 2003 WL 1985792 at *1-3. This Court finds that the Michigan Court of Appeals' decision is consistent with *Jackson* and constitutes a reasonable application thereof, as well as a reasonable determination of the facts in light of the evidence. At trial, the testimony established that two African-American men robbed the party store owner and two of his customers and assaulted another customer at gunpoint. A passerby at a nearby red light observed the suspects leave the store in a car and followed that car until police arrived. The police pursued the car until it crashed in an apartment complex parking lot and the robbers fled on foot. The police recovered two head scarfs and a paper bag containing $379 from the vehicle. Petitioner's fingerprint was found on the paper bag recovered from the car and his DNA was a match to the saliva found on one of the head scarfs. While none of the victims or observers could identify the robbers, Petitioner matched the description of one robber's height and skin color. Furthermore, Petitioner's alibi defense, attested to by his girlfriend and himself, was not particularly strong and could have been reasonably discounted by the jury given the conflicting evidence. Similarly, Petitioner's explanations for the forensic evidence, while plausible, were not airtight and could have been reasonably rejected by the jury. Given the evidence presented at trial, particularly the forensic evidence, a rational trier of fact could conclude that Petitioner committed the crimes beyond a reasonable doubt.

Petitioner's insufficient evidence claim essentially challenges the weight to be accorded certain pieces of evidence. Such determinations, however, are not matters for federal habeas

review.  It is well-settled that a "federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).  Petitioner is thus not entitled to relief on these claims.

      C.    <u>Sentencing Claim</u> (Habeas Claim III)

Petitioner also asserts that he is entitled to habeas relief because the trial court inaccurately sentenced him by scoring 25 points for offense variable 13 of the Michigan sentencing guidelines. Respondent contends that this claim is not cognizable and lacks merit.

It is well-established that a trial court's perceived improper interpretation of the Michigan sentencing guidelines is not a basis upon which federal habeas relief may be granted.  *See Whitfield v. Martin,* 157 F. Supp. 2d 758, 762 (E.D. Mich. 2001).  A criminal defendant has no state-created liberty interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence.  *See Lovely v. Jackson,* 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).  Additionally, there is no federal constitutional right to individualized sentencing.  *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004) (petitioner had "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations").  Accordingly, to the extent that Petitioner asserts that his sentence violates the state sentencing guidelines, his claim is not cognizable on habeas review because it is a state law

12

claim. *See Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001).[1]

To the extent that Petitioner asserts that his sentence is disproportionate under state law, he also fails to state a claim for federal habeas relief. *See Austin v. Jackson*, 231 F.3d 298, 300 (6th Cir. 2000) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994). Petitioner is similarly not entitled to relief on any claim that his sentence constitutes cruel and unusual punishment under the Eighth Amendment. The United States Constitution does not require strict proportionality between a crime and its punishment. *See Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583. A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin*, 213 F.3d at 302 (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). "Federal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *Thomas*, 49 F.3d at 261. Petitioner was sentenced as a fourth habitual offender to concurrent terms of 15 to 40 years imprisonment on his convictions. This sentence was within the guideline range, *see Winton*, 2003 WL 1985792 at *3, as well as the statutory maximum. *See* Mich. Comp. Laws §§ 750.529, 750.89, 769.12. Accordingly, this Court concludes that the trial court acted within its discretion in imposing Petitioner's sentence and there

---

[1] The Court notes that the trial court's scoring of offense variable 13 is supported by the record as three individuals were robbed at gunpoint, *see Winton*, 2003 WL 1985792 at *3, and the Michigan Court of Appeals' decision is neither contrary to nor an unreasonable application of United States Supreme Court precedent.

is no extreme disparity between Petitioner's crimes and his sentence so as to offend the Eighth Amendment. Habeas relief is not warranted on this claim.

## V.   Conclusion

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented. Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that, if Petitioner desires to seek a certificate of appealability ("COA"), Petitioner may file a **MOTION** for a COA with this Court within **TWENTY-ONE (21) DAYS** of filing a notice of appeal and shall support this motion with an appropriate brief, both of which shall comply with the Local Rules of this Court. *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002) (**"We do encourage petitioners as a matter of prudence to move for a COA at their earliest opportunity so that they can exercise their right to explain their argument for issuance of a COA."** (emphasis added)). Respondent may file a response with an appropriate brief, both of which shall comply with the Local Rules, within **FOURTEEN (14) DAYS** of service of Petitioner's motion for a COA.

s/Paul V. Gadola
PAUL V. GADOLA
UNITED STATES DISTRICT JUDGE

DATED:   November 17, 2005

14

Certificate of Service

I hereby certify that on  November 17, 2005  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Debra M. Gagliardi , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:   Paul D. Winton; #271526, St. Louis Corr. Facility; 8585 N. Croswell Road; St. Louis, MI 48880 .

s/Ruth A. Brissaud
Ruth A. Brissaud, Case Manager
(810) 341-7845